[Civ. No. 3429. Fourth Dist. June 26, 1946.]

JOHN PRATO et al., Respondents, v. CHARLES E. MOORE et al., Appellants.

Harry H. Parsons for Appellants.

Jerome Lyman Richardson for Respondents.

BARNARD, P. J.—This is an action to cancel a lease or contract for the development of certain mining property.

The plaintiffs were the owners of two sets of mining claims, one supposed to contain talc and the other lead and silver. On April 17, 1940, they entered into a contract with the defendants for the purpose of developing these properties and producing ore. So far as material here this agreement provided that the defendants would furnish, at their own expense, all labor, equipment and supplies necessary for developing these mining properties and extracting ore therefrom; that they would employ in this connection an average of at least three men for at least six months during each year, commencing with the year 1940; and that the proceeds from all ore produced and sold should be divided equally between them and the plaintiffs. It was also provided that if the mining properties were sold during the life of the agreement the proceeds should be equally divided, but that no such sale could be made without the mutual written consent of all parties. It was further provided that the defendants should have the right to withdraw and terminate the agreement at any time, and that in the event they should fail to employ an average of three men a day for at least six months a year, in accordance with the contract, the plaintiffs "shall have the right to terminate this agreement if said second

parties shall fail to comply with said requirement within thirty (30) days after receipt of written notice from first parties to that effect."

On December 29, 1942, a written notice was served on the defendants that the plaintiffs "hereby elect to terminate and cancel that certain agreement," which is then particularly described, upon the ground that the defendants had failed to comply with its terms in that they had failed to employ, in connection with the development of the properties, an average of three or more men for at least six months during each year. On receipt of this notice the defendants put two or three men to work on the property for a short time, but failed to make up the deficiency. This action was brought on February 5, 1943, and the complaint was later amended. The complaint alleged the execution of the contract and the failure of the defendants to comply with its terms, in the respects described in the notice. It also alleged forfeiture and abandonment. In their answer the defendants admitted service of the notice upon them, but denied its sufficiency under the terms of the contract. As special defenses, it was alleged that the defendants had been frustrated and prevented from performing the contract by federal and state laws, rules and regulations adopted in connection with carrying on World War II, and that the plaintiffs had interfered with the defendants "in the operation or endeavored sale of said property" in that they had interfered with the sales of these mining claims "which these defendants were able and willing to make," and had interfered with the installation of machinery and with operation of the properties.

At the trial there was evidence that in 1940 the defendants had employed only three men for a period of about three months; that in 1941 they had employed two men for a period of two months; that in 1942, no work was done on the properties; that very little machinery was ever placed on the property and that little was removed sometime in 1941; that no lead or silver ore was taken out except a few samples for assaying; and that no talc was produced or sold. The defendant Charles E. Moore testified that "We was up there" three times in 1940; that they took up three parties who were "interested in buying the property"; that they did no actual digging on the lead and silver claims; that they "didn't find nothing so we didn't go in"; and that he could not tell how much talc they took out "because it wasn't much

good and we dumped it over the dump.'' The court found in all respects in favor of the plaintiffs and the defendants have appealed from the judgment which followed.

■ It appears beyond question that the court's findings, to the effect that the required amount of work was not done and that the contract was breached in this respect, are amply sustained by the evidence. The appellants practically admit this and make no contention to the contrary. In view of this situation only a few of the points they raise are material to this appeal. The first of these is that the notice given by the respondents was not sufficient, under the terms of the agreement. It is argued that the notice, as given, was a ''pronunciento'' to the effect that the agreement was absolutely terminated and canceled as of that date, that it gave them no alternative at all, and that it should have informed them that they had thirty days thereafter in which to remedy any deficiencies. This contention is without merit. The contract provided that, in the event of the failure indicated in the notice, the respondents should have the right to terminate the agreement if the appellants failed to comply with that requirement within thirty days after written notice from the respondents to that effect. This gave the respondents, in the event of such a default, the right to give notice of their election to terminate the contract. The appellants could then avoid and prevent the termination by curing the defect within thirty days. The notice given on December 29, 1942, did not state that the contract was arbitrarily terminated or that it was terminated as of that date. In effect, it stated that the respondents intended to avail themselves of that provision of the contract and to exercise their right of termination in accordance with the terms of the agreement. Under the contract itself which was specifically referred to in the notice, and as the appellants well knew, they then had thirty days in which to remedy their default. Not only is this a reasonable interpretation of the contract and of the notice, but it fully appears that the appellants so understood it. They immediately put some men to work in an endeavor to comply with the notice and contract, but failed to do so and soon abandoned the attempt. The court's holding in this regard must be sustained.

■ With respect to the defense of frustration it is urged that the court erred in failing to find that the appellants were prevented from performing this contract by the existing war

and the laws and regulations made in connection therewith. There is no evidence to support such a finding had it been made. There was a serious failure of performance during two calendar years before war was declared. During that time little machinery was installed and even that little was removed by someone in 1941 and not replaced. Not only does it appear that no serious effort was at any time made to carry on mining operations but the evidence given by the appellants themselves strongly indicates that they were much more interested in trying to sell these mining properties than in attempting to carry on mining operations and producing ore. The only specific evidence in the record bearing on the claim of frustration is with respect to some difficulty experienced by the appellants in obtaining a permit to procure and use dynamite. However, it appears that they did secure such a permit and that they then procured a quantity of dynamite. But it does not appear that they used the dynamite they procured, that they could not have procured more under the permit, or that they needed or would have used any additional amount. The authorities cited on the issue of frustration are entirely inapplicable under the facts here appearing.

With respect to the contention that performance on the part of the appellants was prevented by interference on the part of the respondents, little need be said. Most of the contentions in this regard relate to the refusal of the respondents to consent to the sale of these properties to purchasers whom the appellants claim to have produced. Aside from any other consideration, the respondents were under no obligation to sell these properties, and had a right to refuse to do so. Some contention is made that the respondents also interfered by refusing to sign written contracts for the sale of products from the mines, which contracts had allegedly been negotiated by the appellants. Not only was nothing ever produced which could be sold but the appellants had the right, under the agreement, to sell anything which might be produced and neither the consent nor signatures of the respondents were required. No interference appears in this regard which could possibly affect or excuse the breach of the contract here in question. The other matters relied on in this connection were not only minor in nature, but at best constitute no more than a conflict in the evidence. The evidence, as a whole, fully supports the contrary findings made by the

court on the issues of interference and obstruction on the part of the respondents.

There are many claims of error in connection with the admission or rejection of evidence. Most, if not all, of these rulings were correct and in no instance could the ruling be held prejudicial in view of the circumstances shown in connection with the controlling issues.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 22, 1946.